IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MELINDA HAMILTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-00488-BP |
| | § | |
| MIKE BLOOMBERG 2020 INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO:  HONORABLE HAL R. RAY, JR.,
UNITED STATES MAGISTRATE JUDGE:

COMES NOW, the Plaintiff, Melinda Hamilton, and files her Second Amended Complaint complaining of Defendant, Mike Bloomberg 2020 Inc., and for cause of action would respectfully show the Court as follows:

## I.

## JURISDICTION

1. Defendant removed this case to federal court asserting diversity of jurisdiction under 28 U.S.C. § 1331. Upon removal, Plaintiff asserted there is no federal jurisdiction over these claims. The Court held that there was jurisdiction under 28 U.S.C. § 1331.

## II.

## VENUE

2. Venue is proper in the Northern District of Texas because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred there.

## III.

## PARTIES

3. Plaintiff Melinda Hamilton is an individual who is a citizen of the State of Texas and lives in Tarrant County, Texas.

4. Defendant Mike Bloomberg 2020 Inc. is a Delaware corporation with a principal place of business in New York, New York.

## IV.

## FACTUAL ALLEGATIONS

5. Plaintiff is a talented employee with a history of involvement in political campaigns.

6. Defendant is the campaign for billionaire and former New York City Mayor Mike Bloomberg.

7. Defendant was headquartered in New York, New York with multiple campaign offices in over a dozen dates.

8. Mike Bloomberg designated Defendant as his official campaign with the Federal Elections Commission.

9. Defendant reported to the Federal Election Commission that Mike Bloomberg personally donated $1,089,225,532.11 of his own money to Defendant.

10. Defendant recruited Plaintiff to work for his campaign for the 2020 Democratic Presidential nomination.

11. Defendant touted to the media and Democratic Party voters that it had built a formidable campaign team made up of Plaintiff and others and told voters that campaign employees would continue working to elect Democrats in Texas and in other states even if Bloomberg quit the race for President as a way to attract Democratic Primary voters.

12. In an attempt to attract support of his Mike Bloomberg campaign for President, Mike Bloomberg promised to keep his employees employed working for Democrats through November even if he pulled out of the race:

> "[T]he more intriguing part of the Bloomberg campaign's employment pitch is that the field-organizing jobs will go through November, even if he loses this spring. Bloomberg is pledging to deploy a field operation on behalf of whoever becomes the Democratic nominee."

Chris Smith, Vanity Fair "BLOOMBERG IS PAYING ORGANIZERS $70 OR $80": BLOOMBERG SPENDS HUGE ON GROUND GAME – THROUGH NOVEMBER, EVEN IF HE'S OUT," December 16, 2019.

13. A source for that article was Dan Kanninen, the States Director of Defendant's campaign.

14. Mr. Kanninen later affirmed that the message delivered in the article was approved by the "comms team" of the Bloomberg campaign.

15. Senior Advisor to Defendant, Timothy O'Brien, a journalist formally employed by Bloomberg LLP but retained to speak to media on behalf of the Defendant campaign, upon consulting campaign literature and Defendant's campaign leadership, learned that the campaign was telling voters that it planned to keep its campaign staff employed through November even if Mike Bloomberg pulled out of the race and that Mr. O'Brien was authorized to make such representation when speaking on behalf of the campaign to the media, supporters, and potential supporters.

16. Furthermore, Mr. O'Brien, speaking on behalf of Defendant, conveyed that same message to publications in Texas (as well as nationally on television) in January, February and March of 2020.

17. In particular, Mr. O'Brien was quoted in Texas Monthly: "for us -- and we've said this a lot publicly now -- we're hiring people for a year. This office [in Texas] is going to be open till November. Everybody is being hired through the election.'"

18. In that same Texas Monthly article for which Mr. O'Brien provided source material in January of 2020, the reporter stated: "[Defendant] also made the unusual promise that those field organizers will keep their jobs through the election in November, whether or not Bloomberg ends up securing the nomination."

19. In January of 2020, Mr. O'Brien was on Wolf Blitzer's television program on CNN, wherein he stated: "As we've said repeatedly, this big electoral machine we're building -- we're in 45 states and territories, 2,100 people on the ground -- will be in service of the party or whoever the nominee is."

20. During the hiring process in late January and early February 2020, Defendant's agents including Kerry Billings, Tracy Scott, Caitlin (last name unknown), Lynn Munford, and other employees of Defendant, orally relayed and/or acknowledged and affirmed this same publicly made promise to Plaintiff directly, guaranteeing Plaintiff a job through the November election, regardless of Mike Bloomberg remaining in the race through that date (the "Representation").

21. The purpose of the Representation was to reinforce Bloomberg's commitment to voters that he would do anything to beat Trump.

22. Defendant acknowledged Texas was a battleground state that it intended to keep its campaign staff employed through the November 2020 election even if Mike Bloomberg dropped out of the race.

23. This Representation was made for the purpose of inducing Plaintiff to work for Defendant and was contingent upon Plaintiff signing an employment contract with Defendant.

24. As confirmed by Dan Kanninen, the Representation was officially sanctioned by the campaign for use in employment recruitment, as well as in advertisements.

25. Concerning recruitment of field campaign staff, the official interview template for organizing staff prepared by the Defendant and used in Plaintiff's interview, it is stated that the position features: "Employment through November 2020 with Team Bloomberg (Location not guaranteed)".

26. Plaintiff and other Bloomberg employees heard and/or read the above publications from Defendant through its employees and official surrogates espousing the guarantee of employment through November of 2020 for organizing staff who joined the campaign.

27. During Plaintiff's employment interview in early February 2020, Defendant's representative used the official interview template, which included a description of the position as being through November of 2020 even if Bloomberg dropped out of the race.

28. During Plaintiff's employment interview, Defendant's representative acknowledged and affirmed the Representation to Plaintiff directly in an effort to induce Plaintiff to work for the campaign.

29. On or about early February 2020, Plaintiff relied on Defendant's Representation and began employment with the Bloomberg campaign as a field organizer.

30. Plaintiff relied on this Representation to her detriment, leaving other employment and forgoing other employment opportunities.

31. In agreeing to work for Defendant, Plaintiff refrained from supporting any other Democratic campaign for President.

32. Plaintiff provided sufficient consideration to support this oral contract; namely, leaving other employment, refraining from support for other Democratic candidates for president, as well as agreeing to not disparage Mike Bloomberg during or after her employment with Defendant.

33. Defendant promised to pay Plaintiff $6,000 per month, beginning in early February 2020 through the election in November of 2020, plus provide employment benefits like paid leave during the COVID-19 crisis and health insurance.

34. Plaintiff worked hard to earn voter support for Mike Bloomberg contacting voters in person door to door and by phone, mostly working 12 hour days 7 days a week.

35. Defendant controlled the details of Plaintiff's work, providing training and scripts to be followed when communicating voters.

36. Defendant provided a employee handbook to Plaintiff governing the details of Plaintiff's work.

37. Plaintiff had no supervisory responsibilities.

38. Plaintiff worked 25 hours in excess of overtime hours on average per week.

39. Defendant recorded Plaintiff's hourly wage at $34.51.

40. Plaintiff participated in campaign conference calls daily in which the campaign provided its field staff detailed instructions for their work.

41. After Plaintiff was hired, Defendant through Kerry Billings Tracy Scott and other employees continued to repeatedly make the Representation to Plaintiff, other employees and potential voters.

42. Before and after Plaintiff was hired, Bloomberg himself and his surrogates repeatedly stated to voters in stump speeches and media interviews that campaign workers would continue to have jobs through the November 2020 election even if Mike Bloomberg dropped out of the Presidential race in Texas and other states.

43. Plaintiff relied on this Representation made after she was hired to her detriment, leaving other employment and forgoing other employment opportunities.

44. Plaintiff relied on this Representation made after she was hired and refrained from supporting any other Democratic campaign for President.

45. Such actions of Plaintiff after hired provided sufficient consideration to establish a post hiring oral contract, separate and apart from its initial contract.

46. On or about March 3, 2020, Bloomberg competed in over a dozen democratic primaries earning over 2.4 million votes (over 6% of all votes cast in all Democratic Presidential primaries) and winning 61 delegates.

47. On or about March 4, 2020, Mike Bloomberg suspended his campaign for the presidency.

48. On or about March 10, 2020, Defendant informed Plaintiff that her employment was terminated, and she would be paid through the end of March.

49. In total, Plaintiff's wages lost due to reliance on Defendant's Representation and/or Defendant's breach of the Representation total $42,000.

50. The Representation was made publicly -- and repeatedly -- by Defendant for the purpose of bolstering support for Defendant's campaign and helping Defendant earn votes, good will and delegates.

51. This is exemplified by Defendant's choice to include the Representation in official campaign advertisements, as well as for Mr. O'Brien to expressly espouse that this message was being delivered to "voters".

52. On March 9, 2020, Defendant's States Director Dan Kanninen acknowledged this Representation was made to organizers.

53. Moreover, the Representation was approved by Campaign Manager Kevin Sheekey.

54. On March 9, 2020, Mr. Kanninen acknowledged that the campaign and candidate repeatedly promised employees that they would have jobs through the November election and

terminating employees in light of the repeated Representations would be bad for Mike Bloomberg's reputation.

55. A post-hoc effort was necessary because Defendant had not conceived of any specific plan to fulfill the promises of the Representation at the time the Representation was made and when it was repeatedly, publicly espoused by officially sanctioned agents of the campaign.

56. Moreover, in the time between Plaintiff's reliance on the Representation and Mr. Kanninen's March 9, 2020 communication, the campaign had no plan to ensure fulfillment of the promises made in the Representation.

57. Nonetheless, shortly after Bloomberg dropped out, Mr. Kanninen proposed using a "re-application" process to rid the campaign of field organizing staff who had been promised continued employment upon suspension of Mike Bloomberg's campaign.

58. Defendant's campaign manager, Kevin Sheekey, acknowledged on March 10, 2020 that Defendant never intended to employ all field organizing staff through election day in the event Mr. Bloomberg did not win the nomination and tried to claim it only applied to staff in a few states.

59. Ultimately, Plaintiff was not offered the opportunity to remain with the campaign by Defendant after the March 10, 2020 termination.

60. In an efforts to build support and enthusiasm among voters, Defendant sold campaign swag to voters its website including yard signs, buttons, t-shirts, "You're fired" matchbox, stickers, socks, mugs, totes, hats, bandanna, t-shirts for dogs, and onesies for children, all items featuring Bloomberg campaign logos.

61. The orders for campaign swag made on Defendant's website were fulfilled by Bumperactive in Austin, Texas.

62. People from all fifty states made tens of thousands of purchases of Bloomberg campaign swag.

63. Defendant purchased 4,100 cell phones for its employees, including Plaintiff, from Apple, Verizon, Presidio and Insight (headquartered in Arizona).

64. Defendant purchased more than 3,800 laptops for campaign workers, including Plaintiff, from Apple, Verizon, Presidio and Insight (headquartered in Arizona).

65. The campaign cell phones and lap tops were shipped from the campaign's headquarters in New York or Presidio's warehouse in Maryland directly to campaign field workers in over a dozen states.

V.

CAUSES OF ACTION

First Cause of Action: Breach of Contract

66. Plaintiff refers to and incorporates paragraphs 1 through 65 inclusive, hereinabove, as if fully set forth here at, *seriatim*.

67. A valid and enforceable oral contract exists between Plaintiff and Defendant.

68. Defendant made the representation both before and after Plaintiff commenced employment with Defendant, and Plaintiff provided sufficient consideration in return by working.

69. Specifically, Defendant induced Plaintiff to leave other employment, surrender future opportunities, and sign an employment agreement by promising that Plaintiff would be guaranteed employment for $6,000 per month, beginning on early February 2020 through the election in November of 2020, plus employment benefits like paid leave during the COVID-19 crisis and health insurance.

70. Plaintiff has complied with and performed all conditions precedent and all of her obligations arising under the contract made the basis of this litigation, including leaving other employment, refraining from support for other Democratic candidates for president, agreeing to not disparage Mike Bloomberg during or after her employment with Defendant, as well as performing in accordance with the employment agreement.

71. Despite compliance, Defendant has refused to perform in accordance with the material terms of the oral contract by failing to, among other things, continue Plaintiff's employment through November of 2020, pay Plaintiff her salary, and provide the benefits required under the employment agreement.

72. In total, these wages lost total $42,000, plus lost health insurance benefits.

73. This oral contract was performable within one year -- from early February of 2020 through November of 2020.

74. Accordingly, Defendant has failed to fulfill its contractual obligations and is in material breach of the oral contract. Plaintiff has fully satisfied and performed all conditions precedent.

75. As a direct and proximate result of Defendant's breach of the contract made the basis of this lawsuit, Plaintiff has suffered and sustained substantial injury for which she seeks appropriate judicial relief including, but not limited to, the recovery of actual and special monetary damages (including compensatory and consequential damages), interest, and attorneys' fees in a sum within the jurisdictional limits of the Court.

76. Plaintiff has made written demand prior to or concurrent with the filing of the original Petition, so that pursuant to §38.001 et seq. of the Texas Civil Practice & Remedies Code, Plaintiff is entitled to recover her reasonable and necessary attorney fees for Defendant's violation of the oral contract.

## Second Cause of Action: Promissory Estoppel

77. Plaintiff refers to and incorporates paragraphs 1 through 65 inclusive, hereinabove, as if fully set forth here at, *seriatim*.

78. The acts and omissions which are the subject of preceding paragraphs also meet the elements of promissory estoppel since the doctrine of promissory estoppel made the promise to guarantee employment through the general election in November of 2020 binding since the making of that promise induced actual performance and forbearance on the part of Plaintiff.

79. Therefore, the enforcement of the promise is necessary to avoid injustice.

## Third Cause of Action: Fraud/Fraudulent Inducement

80. Plaintiff refers to and incorporates paragraphs 1 through 65 inclusive, hereinabove, as if fully set forth here at, *seriatim*.

81. By the acts or omissions referenced above, Defendant committed fraud and/or fraudulently induced Plaintiff into entering her contract for employment with Defendant.

82. By its promise to guarantee Plaintiff a job through the November election, regardless of Mike Bloomberg remaining in the race, Defendant fraudulently induced Plaintiff to accept employment with Defendant, at the expense of her current employment and future employment opportunities and opportunity to actively support other candidates.

83. Specifically, Defendant and its employees and representatives falsely stated in numerous publications that Plaintiff would be employed with the campaign through the November election. Moreover, it featured this false Representation in paid advertisements promoting the candidate.

84. Additionally, Defendant and its employees and representatives falsely stated in formal interview templates that Plaintiff and other field organizing employees would be employed with the campaign through the November election.

85.     And during Plaintiff's actual interview for employment, Defendant's representatives made the same false Representation guaranteeing that Plaintiff will be employed with the campaign through the November election.

86.     At the time this false Representation was published in media, included in formal interview templates, and personally delivered to Plaintiff, Defendant had no plan to actually retain Plaintiff and other field organizing employees in Texas, as acknowledged privately by both Kevin Sheekey and Dan Kanninen subsequent to Mike Bloomberg's withdrawal from the race -- Sheekey expressly stated that the campaign always intended to only retain staff in six battleground states (not in Texas), while Kanninen strategized a post-hoc plan to mollify terminated staff with employment applications in other states in an effort to rescue Mike Bloomberg's reputation.

87.     Furthermore, Defendant's representatives in the recruitment process knew of Plaintiff's present employment when making these false Representations.

88.     This false Representation published in media, included in formal interview templates, and personally delivered to Plaintiff was made with the intent to induce Plaintiff to relinquish other employment opportunities in exchange for ongoing loyalty from the Bloomberg Campaign.

89.     Plaintiff justifiably relied on Defendant's statements and reassurances that it would guarantee that Plaintiff would be employed with the campaign through the November election.

90.     As a result of this reliance, Plaintiff accepted employment in the field organizing position and dedicated her time and efforts to getting Mike Bloomberg elected in anticipation of being employed through at least November in support of Mr. Bloomberg, or, at least, in support of the Democratic party in general. Furthermore, in relying upon Defendant's false representations, Plaintiff refrained from supporting any other Democratic campaign for President and agreed not to disparage Mike Bloomberg during or after her employment with Defendant -- effectively

12

precluding himself from *any* further employment in general in the 2020 presidential election or actively supporting another candidate in the primary.

91. Despite Plaintiff's reliance, Plaintiff was terminated upon Bloomberg dropping out of the race and the failure of the Campaign to re-employ Plaintiff through the end of the 2020 election cycle in support of the Democratic cause generally. Thus, Plaintiff suffered monetary damages and is entitled to recover at least $42,000 that she would have earned if not for the false Representation (whether in her prior employment that she surrendered, or in employment with another campaign for the remainder of the 2020 election cycle), as well as employment benefits lost and mental anguish and loss of enjoyment of life and inconvenience.

92. Alternatively, Defendant made these material misrepresentations with the intent that Plaintiff act on them and induced Plaintiff into signing a written agreement, including, among other things, by leaving current employment, agreeing to an employment agreement that required him not to disparage Bloomberg, maintain confidentiality, and other provisions, performing uncompensated work for Defendant and refraining from actively supporting another candidate.

93. Without the representation, Plaintiff would not have signed the contract and, thus, should have been subject to an oral contract based upon the terms of the representation.

**Fourth Cause of Action: Unjust Enrichment**

94. Plaintiff refers to and incorporates paragraphs 1 through 65 inclusive, hereinabove, as if fully set forth here at, *seriatim*.

95. Defendant used Plaintiff's reliance on Mike Bloomberg's misrepresentations to attract support of his Mike Bloomberg campaign for president, promising to keep its employees employed working for Democrats in general through November even if Mike Bloomberg pulled out of the race.

96. Defendant published the false Representation in numerous news publications and in official campaign advertisements, as well as in official campaign interview templates.

97. Defendant published this false Representation for the purpose of attracting electoral support and goodwill from Democratic primary voters, as admitted by senior members of Defendant's campaign.

98. Defendant benefited from hiring Plaintiff and touting that it had built a campaign team made up of Plaintiff and others for the primary campaign through the general election no matter whether Mike Bloomberg earned the Democratic nomination.

99. Defendant earned over 2.4 million of votes and 61 delegates in the Democratic presidential primary as a result, at least in part, of its published campaign promises guaranteeing employment to Plaintiff and others, as well as through its actual hiring of Plaintiff and others for the purported reason of keeping them employed through the end of the general election regardless of Mike Bloomberg's success in the primary.

100. Plaintiff worked to bolster Defendant's campaign and through her mere employment, she presented an image on behalf of the campaign that Defendant (and the candidate Mike Bloomberg) was working broadly for the Democratic cause and not just for Mike Bloomberg's candidacy.

101. Defendant was unjustly enriched by receiving votes and delegates by Defendant's false Representation which it did not fulfill to Plaintiff and other employees by not providing employment through the general election.

102. Plaintiff is entitled to recover the reasonable value of her expected employment from the end of March 2020 through November 2020 election, which amounts to $42,000.

**Fifth Cause of Action: FLSA Overtime Violation**

103. Plaintiff refers to and incorporates paragraphs 1 through 65 inclusive, hereinabove, as if fully set forth here at, *seriatim*.

104. Plaintiff worked hard to help Mike Bloomberg win the Texas Democratic Primary. Plaintiff often times working an average over 12 hours a day and 7 days a week.

105. Plaintiff worked an average of 25 overtime hours a week but was not paid for these hours that were worked.

106. Plaintiff was not an "exempt" employee.

107. Defendant controlled substantial details and methods of how Plaintiff was to engage in tasks and activities for Defendant.

108. Defendant was engaged in interstate commerce by operating a campaign website available to and accessed by people in all 50 states, selling campaign swag in all 50 states, buying cell phones and laptops for campaign staff in over a dozen states, communicating by email, phone calls, providing campaign services, conference calls and text messages with campaign staff in over a dozen states and other extensive campaign activities in over a dozen states and Defendant's headquarters in New York.

109. Defendant failed to pay Plaintiff $5,176.48 in overtime wages.

110. Defendant failed to pay Plaintiff overtime wages in violation of 29 U.S.C. § 201, et. seq., commonly referred to as the Fair Labor Standards Act.

# VI.

# DAMAGES

111. As a result of Defendant's actions, Plaintiff has suffered in the past, and in all reasonable likelihood, will suffer in the future, damages including, lost wages totaling $42,000, lost earning

capacity, mental anguish, emotional pain and suffering, lost employment benefits, inconvenience, loss of enjoyment of life, damage to professional reputation, overtime in the amount of $5,176.48 and other damages.

112.    Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code and/or 29 U.S.C. § 215.

## VII.

## PRAYER

WHEREFORE, Plaintiff prays that the Defendant be duly cited to appear and answer herein, that upon a final trial of this cause, Plaintiff recover:

1. Judgment against Defendant, for Plaintiff's damages as set forth above;

2. Attorney's fees pursuant to 29 U.S.C. § 215 and/or Chapter 38 of the Texas Civil Practices and Remedies Code;

3. Interest on said judgment at the legal rate from date of judgment;

4. Prejudgment interest as allowed by law;

5. Costs of Court; and

6. Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ JASON C.N. SMITH
JASON C.N. SMITH
State Bar No.   00784999

LAW OFFICES OF JASON SMITH
612 Eighth Avenue
Fort Worth, Texas 76104
Telecopier: (817) 334-0880
Telephone: (817) 334-0898
E-mail: jasons@letsgotocourt.com
ATTORNEYS FOR PLAINTIFF
MELINDA HAMILTON

## CERTIFICATE OF SERVICE

   I hereby certify that on March 9, 2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court and in accordance with the Federal Rules of Civil Procedure. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Greg W. Curry, J. Meghan McCaig, and Dina McKenney.

            <u>/s/ JASON C.N. SMITH</u>
            JASON C. N. SMITH