IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MELINDA HAMILTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00488-BP |
| | § | |
| MIKE BLOOMBERG 2020 INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant's Motion for Summary Judgment, Brief in Support, and Appendix (ECF Nos. 83, 84, and 85) filed on March 25, 2021, Plaintiff's Response and Brief in Opposition and Appendix (ECF Nos. 92 and 93) filed on April 16, 2021, and Defendant's Reply (ECF No. 95) filed on April 30, 2021. After considering the pleadings and applicable legal authorities, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 83).

**I.   BACKGROUND**

Upon deciding to seek the 2020 Democratic nomination for President, Mike Bloomberg ("Mr. Bloomberg") designated Defendant Mike Bloomberg 2020, Inc. ("Defendant") as his official campaign. ECF No. 78 at 2. Mr. Bloomberg funded Defendant solely with his own funds rather than accept outside contributions. ECF No. 84 at 10. Throughout the campaign, Defendant created and sold advocacy-related merchandise at its cost, which Defendant documented as campaign contributions instead of revenue as the Federal Election Commission required. *Id.*

In January and February 2020, Plaintiff Melinda Hamilton ("Ms. Hamilton") interviewed for a position with Defendant and accepted an offer to be a field organizer in the Dallas and Fort Worth offices. ECF Nos. 78 at 5 and 84 at 10. In that role, she was responsible for:

> (1) executing the overall field strategy to maximize the Campaign's outreach to its key constituency; (2) being accountable for reaching individual goals and metrics outlined in the field plan; (3) identifying and tracking field staff progress with daily and weekly goals; and (4) being the Campaign's representative within the state with community members, voters, and volunteers.

ECF No. 84 at 12. Ms. Hamilton also was responsible for supervising at least fifteen volunteers. *Id.* Ms. Hamilton alleges that Defendant promised to pay her $6,000 per month, as well as provide employment benefits, from her date of hire in early February 2020 through the election in November 2020. ECF No. 78 at 6. Before going to work for the campaign, Ms. Hamilton signed an offer letter prepared by Defendant in which she agreed that her employment

> is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason. Upon any termination of your employment for any reason, no further payments by the Organization to you will be due other than accrued but unpaid salary through the applicable date of your termination and any other accrued benefits to which you may be entitled pursuant to the terms of benefits plans in which you participate at the time of such termination.

ECF No. 85 at 94. The offer letter further stated that "[n]o statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization." *Id.* at 95.

The Defendant also provided Ms. Hamilton an employee handbook, which she signed, that specified the terms of her employment. ECF Nos. 78 at 6 and 84 at 11. By signing the employee handbook, Ms. Hamilton again affirmed that she was an "at will" employee, meaning that her employment "is for no definite period of time," that Defendant could terminate her "with or without cause, notice, or procedural requirements," and that "[n]o representative of the [Defendant] may enter into any oral agreement to alter your at-will status or otherwise create a contractual obligation to you." ECF Nos. 84 at 11 and 85 at 112.

2

Despite the terms of the offer letter and the employee handbook, Ms. Hamilton alleges that she was under the impression that she would be employed until the November election, even if Mr. Bloomberg left the race before then. ECF No. 78 at 5. Ms. Hamilton based this belief on the Defendant's official interview template stating "[e]mployment through November 2020 with Team Bloomberg ([l]ocation not guaranteed)" and through having heard or read media reports that Defendant guaranteed employment of campaign staff members through November 2020. *Id.* Ms. Hamilton claims that the promise of a job through November convinced her to turn down other opportunities and take a position with Defendant. *Id.*

On March 4, 2020, Mr. Bloomberg announced that he was dropping out of the presidential race. *Id.* at 7. On March 10, 2020, Defendant notified Ms. Hamilton that her employment was being terminated, but that she would be paid for the full month of March. *Id.* After leaving the campaign, Ms. Hamilton worked for United Parcel Service, the Census Bureau, and two other political campaigns. ECF No. 92 at 15.

On March 23, 2020, Ms. Hamilton filed this case in state court against Defendant, seeking damages for breach of contract, promissory estoppel, unjust enrichment, and fraud. *See* ECF No. 1-4. On May 15, 2020, Defendant removed the case to this Court based upon diversity of the parties. ECF No. 1. Upon removal, Ms. Hamilton amended her complaint twice. *See* ECF Nos. 39 and 78. In her amended complaints, Ms. Hamilton added an additional cause of action against Defendant, seeking damages for violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"). ECF Nos. 39 at 4 and 78 at 15.

In response to Ms. Hamilton's Second Amended Complaint, Defendant filed a Motion for Summary Judgment. ECF No. 83. In its Motion, Defendant argues that all of Ms. Hamilton's claims fail as a matter of law. ECF No. 84. It asserts that she cannot recover for breach of contract

3

because the alleged oral statements made to her regarding employment through the November 2020 election were not sufficient to alter her at-will employment agreement with Defendant. *Id.* at 13. Defendant contends that she cannot recover for fraud because of the economic loss rule and lack of justifiable reliance. *Id.* at 17. Defendant asserts that Ms. Hamilton's status as an at-will employee defeats her promissory estoppel and unjust enrichment claims. *Id.* at 20, 21. Finally, Defendant argues that Ms. Hamilton cannot recover under the FLSA because she waived any such claim, and Defendant is not covered under the Act in any event. *Id.* at 23.

## II.     LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United*

*Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, the Court resolves factual controversies in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 846 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242-43. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

### III. ANALYSIS

#### A. Ms. Hamilton cannot recover for breach of contract.

Ms. Hamilton alleges that Defendant breached her employment contract by terminating her on March 10, 2020. ECF No. 78 at 9. She claims that she and the Defendant had an oral agreement outlined in public statements made by Defendant's leadership discussing employment of all of Defendant's campaign workers through the November 2020 general election even if Mr. Bloomberg exited the race before then. *Id.* at 9. She asserts that Defendant failed to fulfill its contractual obligations and is in material breach of the oral agreement. *Id.* at 10.

In Texas, to enforce a contract limiting an employer's right to discharge an at-will employee, a plaintiff must prove that "(1) [s]he and [her] employer had a contract that specifically provided that the employer did not have the right to terminate the employment contract at will; and (2) the employment contract was in writing." *Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir. 1989) (*citing Lumpkin v. H & C Commc'ns, Inc.*, 755 S.W.2d 538, 539 (Tex. App.—Houston [1st Dist.] 1988, writ denied)). "[A] limitation on at-will employment cannot simply be inferred," but instead an express agreement stating that a party may not be terminated at will must be present. *Cnty. of Dallas v. Wiland,* 216 S.W.3d 344, 354 (Tex. 2007) (citations omitted); *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 734-35 (Tex. 1985).

Ms. Hamilton asserts that several of Defendant's senior employees, and Mr. Bloomberg himself, made public statements promising that everyone hired to work for the campaign would remain employed until November. Ms. Hamilton contends that the public statements made prior to her employment were "collateral to and distinct from the written employment agreement," while the statements made subsequent to her employment modified the written agreement. ECF No. 92 at 16-17. The Court presumes that any prior or contemporaneous oral agreements between the

parties merged into the written agreement, even without an express merger clause. *Harville Rose Serv. v. Kellogg Co.,* 448 F.2d 1346, 1349 (5th Cir. 1971), *cert. denied,* 405 U.S. 987 (1972). Ms. Hamilton has offered no summary judgment evidence directly rebutting this presumption.

However, the "collateral and consistent" exception permits consideration of parol evidence of prior or contemporaneous agreements that are collateral to and consistent with a binding agreement, but that do not vary or contradict the binding agreement's implied or express terms. *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 451 (Tex. 2008). Ms. Hamilton relies on this exception for the alleged oral agreement between her and Defendant's employees that she would be employed until November 2020. These alleged statements, however, are clearly at variance with the terms of the written agreement, which stated that Ms. Hamilton "is and will continue to be 'at will,' as defined by applicable law, meaning that either [Defendant] or [Ms. Hamilton] may terminate [her] employment at any time, with or without notice and with or without cause, for any reason or for no reason." ECF No. 85 at 94. Likewise, they directly contradict the language of the employee handbook that Ms. Hamilton signed, which provided that she was an at-will employee of Defendant. *Id.* at 112. The at-will nature of Ms. Hamilton's employment with Defendant was central to the agreement, and the Court cannot construe the public statements promising employment through November as "collateral and consistent" with the diametrically opposite provisions in the written letter agreement and employee handbook. As a result, the Court does not accept testimony concerning an alleged oral agreement entered into prior to the written agreement to vary, add to, or contradict the terms of the written agreement of the parties.

Ms. Hamilton's second argument that the statements made subsequent to her employment modified her written agreement is not persuasive because the public statements were not sufficient to modify express terms of a written contract. "An employer's oral statements may not modify an

7

employee's at-will status unless there is a definite, stated intention to do so." *El Expreso, Inc. v. Zendejas*, 193 S.W.3d 590, 594 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W. 501, 502 (Tex. 1998)). To be enforceable, an agreement to modify an at-will relationship must manifest a "definite intent to be bound not to discharge the employee except under clearly specified circumstances." *Brown*, 965 S.W.2d at 502. "[V]ague, oral assurances of future job security … are insufficient to modify an employee's at-will employment." *Ameen v. Merck & Co., Inc.*, 226 F. App'x 363, 374 (5th Cir. 2007); *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,* 112 S.W.3d 854, 856, 858-59 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law"); *Brown v. Kaslle Sys. Of Tex. LLC,* No. H-08-02888, 2010 WL 3342219, at *24-25 (S.D. Tex. Aug. 25, 2010) (an employer's assurances of job security do not raise a genuine fact issue that the parties agreed to modify plaintiff's at-will contract).

The public statements were not addressed to her specifically, but instead were directed to Defendant's campaign workers as a group and the public at large. None of the statements referenced Ms. Hamilton's written agreement or specifically stated that Defendant no longer had the right to terminate her employment at will. Ms. Hamilton concedes that the statements were not made to her in in a signed writing as would be required to limit her employer's right to terminate an at-will employee. Additionally, the public statements were not specific enough to modify either her offer letter, which states that "[n]o statement varying any of the terms of this offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization," or the employee handbook, which states that "[n]o representative of the [Defendant] may enter into any oral agreement to alter your at-will status or otherwise create a contractual obligation to

8

you." ECF No. 85 at 94, 112. As a result, the Court must conclude that notwithstanding the public statements made by various employees of Defendant that campaign workers would be employed through the general election, Ms. Hamilton was an at-will employee of Defendant, and her contract of employment was not modified in writing, signed by Defendant's authorized officer. Accordingly, the Court finds that Ms. Hamilton's breach of contract claim fails as a matter of law.

### B. Ms. Hamilton cannot recover on her promissory estoppel claim.

Ms. Hamilton contends in the alternative that the doctrine of promissory estoppel requires the Court to enforce Defendant's promise of employment until November 2020. ECF No. 78 at 11. Defendant asserts that Ms. Hamilton's claim must fail as a matter of law because under Texas law, there is no recovery under promissory estoppel when an express contract covers the subject matter of the claim. ECF No. 84 at 20. Additionally, Defendant argues that Ms. Hamilton did not prove that she justifiably relied on the Defendant's alleged promises due to the contrary provisions in the written agreement. *Id.* at 21.

> *1. The existence of a written agreement between the parties precludes Ms. Hamilton from recovering on a promissory estoppel claim.*

The doctrine of promissory estoppel prevents a promisor from denying the enforceability of a promise made to another party. *MetroplexCore, L.L.C. v. Parsons Transp., Inc.,* 743 F.3d 964, 977 (5th Cir. 2014). However, Texas law precludes a party from recovering under quantum meruit claims such as promissory estoppel when an express contract between the parties governs the dispute. *Williams v. Colonial Bank, N.A.*, 199 F. App'x 399, 403 (5th Cir. 2006).

Neither Ms. Hamilton nor Defendant disputes that a written employment agreement existed between them. Therefore, Texas law clearly forecloses Ms. Hamilton's alternative claim under a promissory estoppel theory. The cases Ms. Hamilton cites in support of her claim merely teach that a plaintiff may plead both contractual and quasi-contractual theories of recovery alternatively,

9

and a court should not dismiss a promissory estoppel claim when the plaintiff has pleaded all of the necessary elements. In contrast, Ms. Hamilton's case is at the summary judgment stage, and a written employment agreement between the parties exists. Therefore, Ms. Hamilton cannot maintain her alternative, promissory estoppel claim.

> 2. *Ms. Hamilton cannot establish justifiable reliance in light of the provisions of the written agreement.*

To be viable, a promissory estoppel claim, like fraud, fraudulent inducement, and negligent misrepresentation, requires reasonable and justified reliance upon a misrepresentation or promise. *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "When the parties' written agreement addresses the substance of the oral statement and contains language precluding reliance on external representations, Texas courts find reliance on subsequent oral promises unreasonable." *Simpson v. Woodbridge Props., L.L.C.,* 153 S.W.3d 682, 684 (Tex. App.—Dallas 2004, no pet.) (disclaimer of reliance clause in contract negated reliance on post-contract oral misrepresentations); *DRC Parts & Accessories, L.L.C.,* 112 S.W.3d at 858-59 (reliance on both pre- and post-contractual oral representations, directly contradicted by express terms of contract, was not justified as matter of law); *Airborne Freight Corp. v. C.R. Lee Enters., Inc.,* 847 S.W.2d 289, 297 (Tex. App.—El Paso 1992, writ denied) (written contract containing ample cautionary language precluded exclusive reliance by reasonable businessperson on verbal statements contradicting written agreement).

Defendant's summary judgment evidence negates the element of reasonable reliance. The written offer letter and employment handbook unambiguously stated that Ms. Hamilton's employment was at-will and could be terminated by either party at any time. ECF No. 85 at 94, 112. They also provided that the letter agreement could not be modified except by a writing and that no employee of Defendant was authorized to orally modify the terms of the employee

10

handbook. *Id.* at 112. These provisions unambiguously notified Ms. Hamilton that she should not rely on any oral representations that contradicted the terms of the written agreement and employee handbook. *See Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 908 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (clause requiring that amendments to contract be in writing is additional notice not to rely on oral representations). Accordingly, Defendant is entitled to summary judgment on Ms. Hamilton's claim under a promissory estoppel theory.

   **C. Ms. Hamilton is not entitled to recover for fraud.**

Ms. Hamilton alleges that Defendant fraudulently induced her into accepting a position with it by guaranteeing her a job until the November election. ECF No. 78 at 11. Defendant responds that she cannot recover for fraud because of the economic loss rule and because she cannot establish justifiable or reasonable reliance on public statements regarding the term of her employment that contradicted the provisions of the written employment agreement. ECF No. 84 at 17.

    *1. The economic loss rule bars Ms. Hamilton's fraud claims.*

Under the economic loss rule, a party generally cannot recover in tort for losses stemming from a breach of contract when the harm consists only of the economic loss of a contractual expectancy. *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 243 (Tex. 2014). To recover on a tort claim, a party must prove that the alleged breach is "independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). "When the only loss or damage is to the subject matter of the contract, the plaintiff's

11

action is ordinarily on the contract." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

Ms. Hamilton contends that the economic loss rule does not apply because Defendant's false statements arise from an obligation independent of her written employment contract, and her damages exist outside the terms of the contract. ECF No. 92 at 24. Ms. Hamilton asserts that she suffered damages beyond loss of income by being prevented from working for any other Democratic presidential campaign and from seeking other employment opportunities. *Id.* at 25.

Despite Ms. Hamilton's arguments that she seeks to recover for restrictions that are collateral to the agreement, that written agreement with Defendant specifically provided that she could not support other candidates, disparage the Defendant or Mr. Bloomberg, and disclose certain information regarding the campaign. ECF No. 85 at 106-07. By signing the written agreement, Ms. Hamilton agreed that she would not advocate for any other candidates in any election in which Mr. Bloomberg was on the ballot for 120 days after Defendant no longer employed her. *Id.* Thus, the written agreement addressed the possibility of her leaving the campaign and seeking employment with other campaigns. Her damages arising from this alleged collateral issue, if any, arise from the contract with the Defendant, and the economic loss rule requires her to seek redress by way of a breach of contract action, not a suit for recovery in tort.

>    2.  *Ms. Hamilton has not shown that she justifiably relied on a misrepresentation.*

As stated above, fraud and fraudulent inducement claims require reasonable and justified reliance upon a misrepresentation or promise. *Ortiz*, 203 S.W.3d at 421. The Fifth Circuit has held that recovery for fraud is only allowed where the defrauded party "had a right to rely" on a misrepresentation. *Edwards v. Allied Chem. Corp.*, 414 F.2d 60, 64 (5th Cir. 1969). Ms. Hamilton had no right to rely on the alleged oral promise that she would have a job until the November

election. The parties signed a written agreement specifically stating that there were no representations that could bind the parties other than what was expressed in writing. These statements conclusively negate the reliance element under Ms. Hamilton's fraud claim.

Ms. Hamilton argues that the issue of justifiable reliance is a question of fact for trial, not for summary judgment, but courts have properly granted summary judgment in similar cases. *See e.g., Everett Fin., Inc. v. Primary Residential Mort., Inc.,* No. 3:14-cv-1028, 2016 WL 7378937, at *16 (N.D. Tex. Dec. 20, 2016) (summary judgment proper because party cannot justifiably rely on oral promises after reading conflicting written contract); *Levels v. Merlino,* 969 F. Supp. 2d 704, 726 (N.D. Tex. 2013) (summary judgment proper where plaintiffs claimed fraudulently inducement and oral representations contradicted express written agreement); *Prendes v. Select Portfolio Servicing, Inc.,* No. 4:12-cv-337-Y, 2012 WL 6913511, at *6 (N.D. Tex. Dec. 28, 2012) ("Assuming that oral representations … were made [and were contrary to the contract's terms], while certainly deplorable, they are inconsistent with the parties' contract and thus do not give rise to a fraud claim."). Summary judgment is proper because Ms. Hamilton has not presented any legally sufficient evidence of reasonable reliance, which is a required element. Accordingly, Defendant is entitled to summary judgment on Ms. Hamilton's fraud claims.

**D. Ms. Hamilton cannot recover on an unjust enrichment theory.**

Ms. Hamilton asserts that Defendant was unjustly enriched by not fulfilling its promise to her and other employees. ECF No. 78 at 14. She asserts that Mr. Bloomberg received over 2.4 million votes and sixty-one delegates as a result of her work and the efforts of Defendant's other campaign workers. *Id.* Ms. Hamilton argues that some of the credit for these votes and delegate totals was due to Defendant's promise to guarantee employment of those workers through the end

of the general election. *Id.* Ms. Hamilton concludes that allowing Defendant to break its promise results in its unjust enrichment. *Id.*

In Texas, a plaintiff may recover for unjust enrichment if the defendant has "obtained a benefit from [the plaintiff] by fraud, duress, or the taking of an undue advantage." *Merryman v. JPMorgan Chase & Co.,* No. 3:12-cv-2156-M-BH, 2013 WL 497884, at *6 (N.D. Tex. Jan. 16, 2013) (quoting *Heldenfels Bros. v. City of Corpus Christi,* 842 S.W.2d 39, 41 (Tex. 1992)). "Unjust enrichment is a quasi-contractual claim that is based on the absence of an express agreement." *Anderson v. CitiMortgage,* No. 4:10-cv-398, 2011 WL 1113494, at *6 (E.D. Tex. Mar. 24, 2011). Consequently, the Fifth Circuit has held that when there is a valid, express contract governing the subject matter of the parties' dispute, relief under unjust enrichment is unavailable. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001). But a valid employment agreement between the parties existed, and as a result, unjust enrichment does not apply here.

And even if it were available, Ms. Hamilton has not established by summary judgment evidence that Defendant was unjustly enriched. The "unjust enrichment" Ms. Hamilton alleges is that Defendant benefited from its false public statements by receiving more votes and delegates. Ms. Hamilton offers no evidence to establish a causal link between those public statements and the votes or delegate support that Mr. Bloomberg received during the Democratic presidential primaries. Ms. Hamilton also offered no evidence of how her individual efforts contributed to particular vote or delegate counts. Instead, she has at most shown that the campaign benefitted from the work she performed for Defendant. The Defendant has shown that it paid her for that work. This is not unjust enrichment.

### E. Ms. Hamilton cannot recover under the FLSA.

Ms. Hamilton alleges that Defendant failed to pay her overtime wages in violation of the FLSA. ECF No. 78 at 15. She claims that during her tenure at the campaign, she often worked over twelve hours a day for seven days a week. *Id.* She estimates that she worked twenty-five hours of overtime a week, but was never paid for these hours. *Id.* Ms. Hamilton asserts that the FLSA covers Defendant as it was engaged in interstate commerce by operating a campaign website, buying equipment for employees, and communicating interstate through email and phone calls. *Id.* Additionally, Ms. Hamilton claims that she is not an "exempt" employee and thus was entitled to overtime wages according to the FLSA. *Id.* Defendant argues that Ms. Hamilton cannot recover because Defendant was not a covered enterprise under the FLSA since it was not conducted for a "business purpose," and because Ms. Hamilton is not a "covered individual." ECF No. 84 at 23-29.

The FLSA requires employers to pay employees a minimum hourly rate for each hour worked and overtime compensation for each hour worked over forty hours in each workweek. 29 U.S.C. §§ 206(a), 207(a). To establish FLSA coverage, Ms. Hamilton must show (1) she was personally engaged in commerce or the production of goods for commerce ("individual coverage") or (2) she was employed by an enterprise engaged in such activity ("enterprise coverage"). *Id.* § 207(a)(1); *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). For individual coverage, the Fifth Circuit has held that "engaged in commerce" requires work that is "so directly and vitally related to the functioning o[f] an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity." *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (quoting *Sobrinio v. Medical Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007).

The FLSA defines an "enterprise" as "the related activities performed ... by any person or persons for a common business purpose." 29 U.S.C. § 203(r). To qualify as an enterprise, the business must have "employees engaged in commerce or in the production of goods for commerce, or [having] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and the business's "annual gross volume of sales made or business done [must not be] less than $500,000...." *Id.* § 203(s)(1)(A)(i)-(ii).

Ms. Hamilton concedes that neither the FLSA nor binding case law interpreting it states whether enterprise coverage applies to a political campaign such as Defendant. She argues that since the Supreme Court has recognized that activities of eleemosynary, religious, or educational organizations may be performed for a business purpose, then a political campaign also should be considered to be performed for a business purpose. ECF No. 92 at 35. However, Ms. Hamilton does not cite authority on point supporting her position, and one Florida district court has held that enterprise coverage does not apply to political campaigns. *See Johnson v. Trump for President, Inc.*, No. 19-cv-00475-T-02SPF, 2019 WL 2492122, at *4 (M.D. Fla. June 14, 2019) (enterprise coverage inapplicable to political campaign as there were no allegations "that commercial competition was a primary, secondary, or even tertiary endeavor" of the campaign) (citing *Katz v. DNC Servs. Corp.*, No. 16-5800, 2018 WL 692164, at *6 (E.D. Pa. Feb. 2, 2018)).

Instead, Ms. Hamilton argues that Defendant is an "enterprise" because it created and sold promotional campaign merchandise. ECF No. 78 at 15. She contends that Defendant competed with private industry through these sales, and she cites a Supreme Court case in support by analogy. *See* ECF No. 92 at 35 (citing *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 297 (1985) ("a nonprofit religious organization whose primary purpose included establishing and maintaining an Evangelistic Church had a business purpose and that those related business

16

activities competed with private enterprise."). However, unlike the church in *Alamo Foundation*, Defendant did not derive the bulk of its income from operating commercial businesses, such as service stations, roofing and electrical construction companies, and motels. *See* 471 U.S. at 292. Instead, Defendant created and sold promotional campaign materials at its cost which were "not received in the ordinary course of any trade or business," and therefore, are not considered commercial income. 26 U.S.C. § 527(c)(3). At most, the sale of campaign items was ancillary to Defendant's primary mission of supporting Mr. Bloomberg's quest for the presidency. Accordingly, Ms. Hamilton has not established that Defendant is a commercial "enterprise" within the meaning of the FLSA.

Ms. Hamilton also has not established that she was a covered individual under the FLSA during her employment with Defendant. As stated above, to be a covered individual, Ms. Hamilton must show that she "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Defendant undoubtedly had campaign staff working in numerous states, but Ms. Hamilton has not established that she personally performed interstate work to the extent that it was not an isolated activity. *See Henagan*, 595 F.3d at 621. Instead, Ms. Hamilton testified that she worked for Defendant entirely in the state of Texas. *See* ECF No. 85 at 86; Pl.'s Dep. at 100:10–12. While Ms. Hamilton participated in phone calls with other people located outside of Texas, she did not establish that those interstate telephone calls were so regular and recurrent that they were "directly and vitally related to the functioning" of her employment. Additionally, Ms. Hamilton's employment agreement specifically stated that her position "is classified as exempt from the overtime provisions of federal and applicable state laws." ECF No. 85 at 94, 96. Because Ms. Hamilton has not shown that Defendant was a covered enterprise and that she was a covered individual under the FLSA, she cannot recover for violations of it.

## IV. CONCLUSION

In a lawsuit brought by another former Bloomberg presidential campaign worker in the Southern District of Texas, United States District Judge Keith P. Ellison summed up the case as "an unfortunate set of circumstances which is different from whether it's a viable claim for relief." *See* ECF No. 85 at 216 (*Scott v. Mike Bloomberg 2020, Inc.*; No. 4:20-cv-2261, at 3 (S.D. Tex. Feb. 24, 2021) (hearing on Defendant's Motion to Dismiss)). Judge Ellison dismissed Ms. Scott's case even though he agreed that "[m]isrepresentations were made." *Id.* at 217 (hearing at 4).

After reviewing the pleadings and summary judgment evidence in Ms. Hamilton's case, the Court reaches the same result. Because of the specific wording of the offer letter and employee handbook Ms. Hamilton signed as she joined Mr. Bloomberg's campaign, she cannot now recover for breach of contract or fraud in the inducement. Her claims of fraud, promissory estoppel, and unjust enrichment are unavailing. Since Defendant was not a covered enterprise and she was not a covered individual, the protections of the FLSA are not available. Accordingly, the Court finds that there is no genuine dispute as to any material fact and that Defendant is entitled to judgment as a matter of law. The Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 83).

It is so **ORDERED** on May 17, 2021.

*/s/ Hal R. Ray, Jr.*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE